Filed 3/13/26  Yu v. Kaiser Foundation Health Plan CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

REGINE YU,

      Plaintiff and Appellant,

v.

KAISER FOUNDATION HEALTH PLAN, INC., et al.,

      Defendants and Respondents.

A169089

(Alameda County
Super. Ct. No. HG20077399)

Plaintiff Regine Yu sued her former employer, Kaiser Foundation Health Plan, Inc. (Kaiser, erroneously sued as "Kaiser Permanente") and two of her colleagues at Kaiser, Shady El-Daoushy and Gwendolyn McElwee, for age, race, gender, and disability discrimination, wrongful termination, and retaliation in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.).  The trial court granted Kaiser's motion for a directed verdict as to some of Yu's claims, and the jury found in favor of defendants on Yu's remaining claims.

On appeal, Yu challenges the judgment on numerous grounds, including error in entering a directed verdict in favor of defendants, defects in the special verdict form, evidentiary errors, instructional error, errors in the jury selection process, and inadequate polling of the jury.  For the reasons

1

discussed below, we conclude that Yu has not demonstrated reversible error. We therefore affirm.

## I. BACKGROUND[1]

Yu started working for Kaiser in 2011 as a senior data consultant. Beginning in 2015, Yu reported to El-Daoushy, a manager in Yu's department.

A conflict soon arose between El-Daoushy and Yu over El-Daoushy's reviews of Yu's work performance. Before El-Daoushy became her manager, Yu received an overall rating of "Excellent" in her performance reviews. For Yu's 2015 performance review, El-Daoushy rated Yu as "Successful," which was a lower rating than "Excellent." Yu believed she deserved a higher rating and a promotion.

In a 2016 performance review, El-Daoushy gave Yu an overall rating of "Performance Needs Improvement." According to El-Daoushy, Yu had refused assignments and exhibited a "lack of communication etiquette." El-Daoushy sought to place Yu on a "Performance Improvement Plan" (or PIP). Yu disagreed with the performance review and characterized the PIP as "an explicit act of personal retaliation" against her for her disagreement with El-Daoushy's performance reviews.

In October 2016, Yu began a 12-week medical leave of absence due to her exhaustion and insomnia from working long hours at Kaiser. Her physician later extended her leave through mid-February 2017.

In January 2017, McElwee, Kaiser's disability manager, asked Yu's physician to specify the physical or mental limitations that prevented Yu

---

[1] The appellate record is lengthy, consisting of over 4,000 pages. Therefore, we limit our recitation of the background facts to the portions of the record cited by the parties in their appellate briefs and that are relevant to the issues we are deciding on appeal.

2

from performing her job duties and the "estimated duration" of those limitations. Yu's physician responded that Yu's insomnia and anxiety were causing Yu to have difficulty focusing and concentrating. Yu's physician further noted that Yu's wrist and back pain reduced her ability to use a keyboard and sit for long periods of time. The physician indicated that the duration of Yu's limitations would be an unspecified number of "months."

After Yu sought to extend her leave of absence for another year, McElwee reminded Yu that her leave would expire in April 2017 under Kaiser's medical leave policy, which generally limited the length of time that an employee may take a medical leave of absence to six months. McElwee advised Yu that if she needed an extended leave of absence, Yu's physician needed to identify Yu's specific medical limitations or restrictions, their estimated duration, and an expected return to work date. Yu said she would follow up with her doctor.

Yu subsequently provided McElwee with a "work status report" from her physician extending her leave through April 3, 2018. The report did "not contain the required information" to determine reasonable accommodation.

In May 2017, McElwee reiterated to Yu that she had repeatedly asked for but had not received information from Yu's physician regarding Yu's work limitations and an expected return to work date. As a result, "the interactive process [was] concluded and [Yu's] employment with Kaiser [would] be terminated." Kaiser terminated Yu's employment the following month.

After filing a complaint with the Department of Fair Employment and Housing (DFEH), Yu initiated this action against defendants. Some of Yu's claims were subsequently dismissed, leaving the following causes of action for trial: (1) discrimination based on age, race, and gender; (2) retaliation in violation of the FEHA; (3) wrongful termination; and (4) disability

3

discrimination. Yu alleged that El-Daoushy discriminated and retaliated against her by refusing to promote her and by terminating her employment.

At trial, El-Daoushy testified that Yu was "at the top of [her] job family" so there was "no promotion." However, Yu could have applied for a managerial position in "a different job family." El-Daoushy said he offered Yu an "opportunity that is within the job description of the senior lead consultant that [she could] lead people" to give her relevant experience in case she decided to apply for a manager position in the future. It was not a promotion; "you cannot fire or hire people, you don't have people reporting to you," and there was no "additional pay." After Yu "denied the opportunity," El-Daoushy gave the "lead" role to another woman over the age of 50, who later applied for and received a manager position with Kaiser.

In her testimony, Yu acknowledged that her prior manager at Kaiser had told her that she needed to apply for a promotion in another department to receive a promotion. Additionally, the evidence shows that Yu urged El-Daoushy's boss to promote her to a manager position. He responded that she should apply to manager positions when new positions were "posted." The parties stipulated to the fact that the only positions Yu applied for during her employment with Kaiser were other senior data consultant positions.

Regarding her claims of discrimination, Yu testified that after two employees retired in 2016, El-Daoushy hired three individuals who were under the age of 40. She also testified that when she was on medical leave, McElwee asked her to resign even though Yu had "completely cooperated with" McElwee whenever McElwee requested information from Yu's physician.

McElwee testified that Yu was terminated because "we could not continue to accommodate an indefinite leave of absence." Although Yu

4

claimed that she sent McElwee an "evaluation" from her physician, McElwee denied ever receiving the document. McElwee testified that Human Resources did not consider Yu's age, race, or gender in deciding to terminate her employment, and El-Daoushy was not involved in the decision.

McElwee further testified that Yu did not complain to her about discrimination occurring in the workplace. Other Kaiser employees similarly testified that they were not aware of any complaints from Yu about discrimination or retaliation.

After the parties rested, Kaiser orally moved for a directed verdict. The trial court granted the motion as to Yu's claims for retaliation in violation of the FEHA and race and gender discrimination and as to the issue of whether Kaiser failed to promote Yu. The jury returned a verdict in favor of Kaiser on Yu's remaining claims for disability discrimination, disparate treatment based on age discrimination, and wrongful termination based on disability and age discrimination.

## II. DISCUSSION

### A. Yu's Burden on Appeal

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Absent a contrary showing in the record, we make " 'all presumptions in favor of the trial court's action.' " (*Id.* at p. 609.) In showing error, an appellant's opening brief must provide "meaningful argument with citation to law or the evidentiary record." (*Sehulster Tunnels/Pre-Con v. Traylor Brothers,*

*Inc./Obayashi Corp.* (2003) 111 Cal.App.4th 1328, 1345, fn. 16; see Cal. Rules of Court, rule 8.204(a)(1)(B).)

Additionally, an appellant has the burden not only to show error, but resulting prejudice, or the claim of error fails. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963, called into doubt on another ground in *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108.) These rules apply to self-represented litigants. (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

As we will discuss, applying these principles, Yu fails to carry her burden on appeal as to any of the issues she raises.

### B. The Directed Verdict

We first address Yu's challenges to the directed verdict. The trial court granted Kaiser's motion for a directed verdict on Yu's FEHA claim for retaliation after finding no evidence that Yu complained about discrimination. The court also granted the motion as to the issue of whether Kaiser failed to promote Yu, finding no evidence that Yu applied for a promotion. Finally, the court granted the motion as to Yu's disparate treatment and wrongful termination claims based on race and gender discrimination upon concluding that there was no evidence that Yu's race or gender was a substantial factor in Kaiser's decision to terminate her.

Yu appears to argue that the court erred in granting defendants' motion for a directed verdict because she presented evidence that Kaiser retaliated and discriminated against her based on her race and gender. In response, Kaiser asserts that the order granting the motion for directed verdict should be affirmed because nothing in Yu's opening brief

6

demonstrates the trial court erred in granting the motion. We agree with Kaiser.

" 'A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party.' " (*Magic Kitchen LLC v. Good Things Internat., LTD.* (2007) 153 Cal.App.4th 1144, 1154.) To avoid a directed verdict, the opposing party's evidence must be more than a mere "scintilla." (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 358–359.) In addition, any inference supporting the opposing party's case must be reasonable. (*Id.* at p. 365.) "[W]e decide de novo 'whether sufficient evidence was presented to withstand a directed verdict.' " (*North Counties Engineering, Inc. v. State Farm General Ins. Co.* (2014) 224 Cal.App.4th 902, 920.)

The trial court's findings in this case are consistent with the law. To have succeeded on a claim of retaliation in violation of the FEHA, Yu would have had to show that she engaged in protected activity by "oppos[ing] a[] practice[] forbidden" by the FEHA. (Gov. Code, § 12940, subd. (h)[2]; see CACI No. 2505 [elements of FEHA retaliation claim].) "[O]ppos[ing] a[] practice[] forbidden" by the FEHA includes complaining about conduct that the employee reasonably believes to be discriminatory. (*Yanowitz v. L'Oreal*

---

[2] Since judgment was rendered in this case, the Legislature amended Government Code section 12940, with the amendments taking affect on January 1, 2025. (Stats. 2024, ch. 877, § 1, effective Jan. 1, 2025.) These amendments did not change subdivision (h) of the statute and do not affect the substance of our analysis.

*USA, Inc.* (2005) 36 Cal.4th 1028, 1042, called into doubt on another ground in *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 637, fn. 8.)

To prevail on her race and gender-based disparate treatment and wrongful termination claims, Yu would have been required to prove that her race and gender were substantial motivating reasons for defendants' decision to terminate her. (See CACI No. 2500 [elements of disparate treatment claim]; *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1320–1321.)

Finally, to the extent Yu's claims were based on defendants' failure to promote her, there is authority that she would have been required to prove that she applied for a promotion and was rejected. (See *Ibarbia v. Regents of Univ. of Cal.* (1987) 191 Cal.App.3d 1318, 1327–1330.)

Nothing in Yu's appellate briefs indicates that the trial court erred in concluding that she failed to present evidence to support the foregoing elements of her claims. First, Yu makes several factual assertions that are unsupported by citations to the record. She also twice cites to a range of over 70 pages in the record as support for her assertions. " 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' " (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *Salas v. California Dept. of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellate court "not required to search the record to ascertain whether it contains support" for plaintiff's contentions].) Additionally, Yu cites several exhibits that are not a part of the appellate record.

The specific portions of the record Yu does cite in support of her argument that defendants discriminated and retaliated against her do not

8

refute the trial court's findings. Most of her cited evidence shows some adverse actions that El-Daoushy took against Yu and that Yu was a hard worker, performed well at her job, and received positive feedback about her work performance. Regarding her failure to promote claim, Yu cites a screenshot of what appears to be a list of job openings for Kaiser that was posted online in 2016. She also cites an e-mail she sent to El-Daoushy listing certain requirements for him to meet before she assumed a "[l]ead" role, including a salary increase and a higher performance review rating. None of this evidence demonstrates that Yu complained of discrimination based on her protected characteristics, that her gender or race was a substantial factor in defendants' decision to terminate her, or that she applied for a promotion and was rejected.

Yu presents no authority or legal analysis demonstrating that her cited evidence otherwise satisfies the elements of her claims. In particular, she does not show that she engaged in protected activity under the FEHA as alleged in her complaint[3] or that she does not need to prove that she applied for a promotion to establish her "failure to promote" claims. Without such a showing, we must presume that the order granting the motion for directed

---

[3] Kaiser acknowledges that taking a leave of absence constitutes protected activity under the FEHA but asserts that Yu did not allege in her complaint that she was terminated because she took a leave of absence. Yu does not argue otherwise. In her reply brief, Yu claims she took other "protected actions" but provides no authority or additional record cites in support of this assertion. We therefore presume the trial court correctly focused on the protected activity alleged in Yu's complaint in deciding to grant Kaiser's motion for directed verdict as to Yu's FEHA claims. (See *Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1048–1049 [reversing order granting judgment notwithstanding the verdict where issue was not pleaded in the complaint: " '[t]he pleadings are supposed to define the issues to be tried' "].)

verdict was correct.  (See *Salehi v. Surfside III Condominium Owners' Assn.* (2011) 200 Cal.App.4th 1146, 1161–1162.)

Beyond the substantive merits of the motion for directed verdict, Yu makes two arguments for reversal of the order granting the motion.  Both lack merit.  First, she contends the court violated its own order in allowing Kaiser to make an oral motion for a directed verdict, because the court's pre-trial order stated, "Any motions made during trial, such as . . . directed verdict shall be made in writing."  Assuming without deciding that the court violated its order by permitting an oral motion for directed verdict, Yu has not demonstrated that any error in failing to require a written motion was prejudicial.  She had advance notice of Kaiser's intent to make an oral motion for nonsuit at the close of evidence.  And she has not indicated on appeal what different or additional argument she would have raised in the trial court had Kaiser made its motion for a directed verdict in writing instead of orally.  (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 698 [in the summary judgment context, advising litigants to explain the "prejudice that has been suffered by reason of the defective service and/or inadequate notice"].)

Second, Yu argues that the trial court "misinterpreted Kaiser's directed verdict as 'retaliation on timeliness.' "  (Boldface omitted.)  She asserts that Kaiser's motion for a directed verdict raised two issues, failure to timely exhaust administrative remedies and the lack of a causal connection between her protected characteristics and the disputed employment actions.  Yu seems to be contending that the court improperly granted directed verdict as to her FEHA retaliation claim based on her failure to timely exhaust her administrative remedies.

Yu's argument mischaracterizes the record.  At the hearing on the motion for directed verdict, Kaiser first raised the timeliness and causation

10

issues. Then, after the court stated that "all [Kaiser] argued" was the timeliness of Yu's DFEH complaint, Kaiser's counsel said he "meant to add the retaliation piece." The court thereafter gave the parties an opportunity to present argument on the issue of whether Yu engaged in protected activity under the FEHA. The court ultimately granted the motion as to Yu's retaliation claim on the ground that Yu failed to present evidence at trial that she engaged in protected activity under the FEHA. Thus, the court granted the motion on a different ground raised by Kaiser and after both parties had an opportunity to present argument on the issue. We therefore find no error. Yu offers no legal authority demonstrating otherwise.

In sum, Yu fails to affirmatively demonstrate that the trial court prejudicially erred in granting in part Kaiser's motion for a directed verdict. We therefore conclude that the court properly entered a directed verdict in favor of defendants on Yu's claims for retaliation in violation of the FEHA, failure to promote, and race and gender discrimination.

### C. The Special Verdict

In returning a special verdict finding Kaiser not liable on Yu's claims for disability discrimination, disparate treatment based on age discrimination, and wrongful termination based on disability and age discrimination, the jury found that Yu's age and her physical or mental condition were not substantial motivating reasons for Kaiser's decision to terminate her. On appeal, Yu presents a few challenges to the special verdict, all of which we reject.

Yu first argues that Kaiser discriminated against her based on her age and disability. Kaiser responds that the verdict should be affirmed because it is supported by substantial evidence. We agree with Kaiser.

11

We review the jury's findings on Yu's discrimination and wrongful termination claims for substantial evidence. (*Hoglund v. Sierra Nevada Memorial-Miners Hospital* (2024) 102 Cal.App.5th 56, 75; *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) " '[T]he power of [the] appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the [verdict].' " (*Wilson*, at p. 1188.)

"Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible and of solid value. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. We affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment." (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.)

As relevant to Yu's age and disability discrimination claims, a " 'substantial motivating reason' " is "a reason that actually contributed to the" adverse employment action rather than a "remote or trivial reason." (CACI No. 2507.) It is not enough that the discrimination was "simply *a* motivating factor" for the disputed employment decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.)

Substantial evidence supports the jury's finding that Yu's age and disability were not substantial motivating factors in Kaiser's decision to terminate her. McElwee testified that Yu requested a leave of absence of nearly one and one-half years. McElwee further testified that Kaiser's policy for medical leaves that exceed six months requires the employee to provide "medical certification" from their physician "regarding any work limits or

12

restrictions" to support an extension of the leave, but Yu did not provide medical certification after McElwee requested it. McElwee said she terminated Yu for these reasons. Yu claimed that she mailed McElwee a five-page "evaluation" from her physician, but McElwee said she did not receive the document. Moreover, the five-page document did not provide adequate information regarding Yu's work limitations or restrictions and an expected return to work date. McElwee further testified that Yu's age had no bearing on the decision to terminate Yu. The "only factors that we were looking at" were "leave of absence [and] reasonable accommodations[.]" The jury could have reasonably concluded from this evidence that Kaiser terminated Yu not because of her age or disability but because she did not return to work after her leave of absence expired or provide Kaiser with sufficient information demonstrating her need for an extended leave. Though Yu points out evidence favorable to her, we cannot reweigh the evidence or resolve evidentiary conflicts. (*Huang v. Board of Directors* (1990) 220 Cal.App.3d 1286, 1293–1294.)

The sole authority Yu presents in her appellate briefs as support for her argument that defendants discriminated against her, *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, does not persuade us that reversal is required here. Yu cites *Jensen* for the proposition that an employer's failure to reasonably accommodate a disabled employee violates Government Code section 12940, subdivision (a). (*Jensen*, at pp. 256–257.) She contends that defendants failed to engage in the interactive process and provide her an accommodation and failed to offer a "legitimate business reason" for not accommodating her. Kaiser asserts that Yu was required to support her request for an accommodation with sufficient medical documentation.

13

Although questions regarding the employer's failure to accommodate and engage in the interactive process may be relevant to a disability discrimination claim (see *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 39), we agree with Kaiser that the verdict should not be disturbed based on Yu's interactive process and accommodation claims. Where an employee has a disability that is not obvious, that employee has a duty to " ' "*specifically* identify the *disability* and *resulting limitations*, and to suggest the reasonable accommodations." ' " (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 738–739; see *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 598 ["[w]hen 'the disability or the need for accommodation is not obvious' and the employer requests it, an employee must provide reasonable medical documentation to confirm the employee's relevant limitations"]; Cal. Code. Regs., tit. 2, § 11069, subd. (d)(1).) The employee's failure to provide the required information is fatal to his or her interactive process and accommodation claims. (*Doe*, at p. 740.) Here, the jury could have concluded from the evidence that Yu's mental and physical conditions were not obvious and, as discussed, that Yu failed to provide Kaiser with reasonable medical documentation to support an accommodation as requested by McElwee.

Yu next argues that the special verdict was "incomplete." She seems to suggest that the special verdict form omitted elements of her wrongful termination claim, though she does not identify the elements of her claim that she believes were omitted from the special verdict form or present relevant authority. Regardless, we disagree that reversal is required here.

"A special verdict presents to the jury each ultimate fact in the case, so that 'nothing shall remain to the Court but to draw from them conclusions of law.' " (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280,

14

285.)  The elements of a cause of action constitute the ultimate facts in a civil case.  (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002; see *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 326 [element of a battery claim missing from special verdict].)

If the jury's findings are dispositive of the action and leave nothing for the court but to enter judgment for the defendants, the special verdict is "not fatally incomplete."  (*Contreras v. Goldrich* (1992) 10 Cal.App.4th 1431, 1433–1434.)  In *Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, for example, the jury found that a necessary element of the plaintiffs' negligence claim was not proven.  (*Id.* at p. 1189.)  The appellate court rejected the plaintiffs' argument that the special verdict was legally insufficient to support the judgment, because the jury's finding that the plaintiffs did not prove an essential element of their cause of action was " 'dispositive of [the defendant's] nonliability.' "  (*Ibid.*; see also *Contreras*, at p. 1433 [failure to reach agreement on negligence issue on special verdict was not ground for reversal where the jury found a lack of causation, which was dispositive].)

Here, the jury's verdict was not fatally incomplete.  Question numbers one and three on the special verdict form asked the jury whether Yu's age or physical or mental condition were "substantial motivating reason[s]" for Kaiser's decision to terminate Yu's employment.  These questions reflect an essential element of Yu's wrongful discharge and disparate treatment claims based on age and disability discrimination.  (See CACI No. 2500 [element of disparate treatment claim is that the plaintiff's protected characteristic "was a substantial motivating reason for" the decision to discharge the plaintiff]; *Nosal-Tabor v. Sharp Chula Vista Medical Center* (2015) 239 Cal.App.4th 1224, 1234–1235 [same for wrongful discharge claim].)  The jury answered "[n]o" to question numbers one and three on the verdict form.  Thus, the jury

15

found that Yu did not prove a necessary element of her wrongful discharge and disparate treatment claims. Therefore, "nothing remained for the court but to draw the conclusion of law that respondent is not liable to appellant." (*Contreras v. Goldrich*, *supra*, 10 Cal.App.4th at p. 1433.)

Finally, Yu contends the special verdict form and jury instructions were inaccurate, pointing to question number two on the form, which asks, "Did Kaiser know that Yu had or treat Yu as if she had a physical or mental condition that limited her ability to work." Yu notes that when the jury asked the trial court whether question number two was asking about the point in time subsequent to Yu's leave of absence or to the time she worked at Kaiser prior to her leave of absence, the court responded, "I think it refers to the time she worked at [Kaiser] prior to her discharge." Kaiser disagrees that the verdict form and jury instructions were inaccurate and additionally asserts that any such error did not prejudice Yu.

Even assuming without deciding that the trial court incorrectly answered the jury's question about the verdict form, Yu fails to demonstrate that the error was prejudicial. Instructional error is prejudicial "only when it appears probable that the improper instruction misled the jury and affected the verdict." (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213.) Yu does not address how the alleged instructional error prejudiced her, and we do not see how Yu can show prejudice. The jury answered "[y]es" to question number two on the special verdict form, and thus they answered the question in Yu's favor. (See CACI No. 2540 [requiring plaintiff to prove that defendant knew plaintiff had a history of having a physical or mental condition].) Moreover, the jury found that Yu did not prove a different element of her claims, as discussed above. Therefore, the jury's answer to question number two on the special verdict form could not have affected the verdict.

16

For these reasons, Yu's challenges to the jury verdict fail.

## D. The Trial Court's Evidentiary Rulings

Yu challenges several of the trial court's orders regarding the presentation of evidence at trial. As the party challenging a trial court's evidentiary ruling, Yu has the burden to establish an abuse of discretion, " 'which we will find only if the trial court's order exceeds the bounds of reason. [Citation.] "Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court." [Citation.] We will only interfere with the lower court's judgment if appellant can show that under the evidence offered, " 'no judge could reasonably have made the order that he did.' " ' " (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52.)

### 1. Exclusion of Evidence

Yu contends the trial court improperly excluded relevant evidence. We conclude that she has not shown reversible error.

As support for her argument, Yu points to the exclusion of a communication between Kaiser's in-house counsel and Yu's attorney, Yu's Kaiser paystubs, evidence regarding "MetLife's" denial of Yu's claim for long-term disability benefits, evidence regarding Kaiser's opposition to the DFEH's discovery requests, an e-mail from El-Daoushy announcing that three individuals accepted new positions with Kaiser, and documents from the Costanzo Law Firm, who Yu allegedly hired to investigate her claims of discrimination and retaliation.[4] She asserts that this evidence proves

---

[4] In the background section of her opening brief, Yu asserts that the court excluded client comments about her work and "Shady's Age discrimination and retaliations evidence." She does not develop the argument further, and neither party indicates the basis for the trial court's

17

Kaiser's "bad faith," the timeliness of her DFEH complaint, that Kaiser made errors in her wage statements, and that she hired the Costanzo Law Firm as "protective conduct" in response to Shady's violation of "Kaiser PIP policy and procedures." (Boldface omitted.) She further asserts that the excluded communication between Kaiser's in-house counsel and her attorney demonstrates that negative comments about her work performance were untrue.

Kaiser contends the trial court properly excluded the foregoing evidence because it was irrelevant to Yu's causes of action and the allegations in her complaint. Kaiser also argues that the court properly excluded the communication between Kaiser's in-house counsel and Yu's counsel under Evidence Code sections 350, 1152, 1200.

Yu has not met her burden to show the court abused its discretion in excluding evidence. She does not explain how the evidence she contends was improperly excluded is relevant to her claims by citation to the record and to legal authority. (See Evid. Code, § 210 [defining "[r]elevant evidence" as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence" to the parties' claims].) For example, she does not present any authority demonstrating that hiring counsel in response to Shady's violation of "PIP policy" may constitute protected conduct under the FEHA. Nor does she refute Kaiser's claim that communications between Kaiser's in-house counsel and her attorney were properly excluded under Evidence Code sections 350, 1152, and 1200. Yu's conclusory assertion that

decision to exclude this evidence. Absent a contrary showing, we presume the court excluded the evidence for a proper reason, such as the evidence being cumulative of other evidence that was admitted. (See *Horn v. General Motors Corp.* (1976) 17 Cal.3d 359, 371 ["[t]he trial court has discretion to refuse to admit cumulative evidence"]; Evid. Code, § 352.)

18

the court improperly excluded evidence and abused its discretion does not satisfy her burden to show error affirmatively. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 ["an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim"].)

## 2. *Limiting the Number of Witnesses*

Yu also appears to take issue with the trial court's decision to limit the number of witnesses she could call to testify at trial. We disagree that this decision constituted error.

In general, the trial court has discretion to control the evidence presented at trial and to limit the witnesses called if admission of the evidence will "necessitate undue consumption of time." (Evid. Code, § 352; see *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 149 ["[t]he Evidence Code expressly empowers trial judges to limit the presentation of evidence, even evidence that is relevant and probative"].) Thus, "[t]he court in its discretion may limit the number of witnesses who may be called upon to testify with reference to a single question, . . . and the court can refuse to receive evidence which is purely cumulative." (*Redondo Beach School Dist. of Los Angeles County v. Flodine* (1957) 153 Cal.App.2d 437, 449.)

The record in this case shows that the trial court imposed time limits on the parties' presentation of their case, including, for the liability phase of trial, a limit of 12 hours for Yu's direct examination of witnesses. On the second day of testimony, the court warned Yu that she was not using her time efficiently.

After the third day of testimony, the trial court again warned Yu that she needed to use her time efficiently and avoid presenting evidence that was

"cumulative and repetitive." The court told Yu that if she was using her time well and needed to go over the time limits, the court would exercise its discretion to give her more time to examine witnesses. On the fourth day of testimony, the court advised Yu that the next day would be her last day to call and examine witnesses. After some discussion about the relevance of the remaining witnesses that Yu wanted to call, Yu decided to call only three more witnesses.

On the fifth day of testimony, Yu told the court she wanted to call four or five more witnesses. In response, the court indicated that her 12 hours were nearly finished. The court further said to Yu, "[D]espite many warnings from the court, you have repeatedly asked questions about issues that are cumulative and only somewhat relevant to the case." The court told Yu that she could file a motion specifying the additional witnesses she wanted to call and their relevance to her case. Yu filed an application seeking to call seven additional witnesses, and the court granted the application as to one of the witnesses.

On this record, the trial court did not abuse its discretion. It was within the court's authority to impose time limits on the parties' presentation of evidence. (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22 (*California Crane School*).) The court repeatedly warned Yu throughout trial that she was not using her time efficiently and was eliciting cumulative testimony on tangential issues. The court also gave Yu multiple opportunities to show that she needed more than 12 hours for direct examination. On appeal, Yu points to nothing in the record indicating that the additional witnesses she sought to call could have presented relevant testimony that was not cumulative. Therefore, she has

20

not shown that the court abused its discretion in not allowing her to call additional witnesses.

Yu hints that she was prejudiced by the trial court's limitation on the number of witnesses she could call because the witnesses that were called to testify were biased, and there "were many contradicted testimonies among them." She also asserts that Kaiser "kept misleading the jurors by quoting the incorrect document." These arguments are forfeited for Yu's failure to support them with authority and citations to the record.

### 3. *Exclusion of Expert Witnesses*

Yu next appears to contend the trial court prejudicially erred in excluding expert witnesses from testifying at trial. She asserts that Kaiser designated several doctors as its expert witnesses in the joint witness list and had deposed three of the doctors, but the court failed to call them as witnesses at trial. Kaiser responds that it was Yu's responsibility to call the doctors as witnesses, and she cannot now claim prejudice because of her own failure to do so. Kaiser's point is well taken. "[T]he decision to call witnesses is ordinarily a trial tactic within the attorney's control." (*People v. Penrod* (1980) 112 Cal.App.3d 738, 750.) Yu presents no authority or legal analysis indicating that reversal is required here for the trial court's failure to call witnesses on its own motion. We therefore see no reason to reverse on that basis.

### 4. *Limits on Witness Questioning*

Finally, Yu contends that she could not examine El-Daoushy and David Frizzell, Kaiser's human resources consultant manager, because the trial court ordered her to provide her questions for those witnesses to the court in advance, the court limited the questions allowed to be asked those witnesses, and the court performed the direct examination of those witnesses. However,

21

Yu does not specify what testimony she sought (but was unable) to elicit from El-Daoushy and Frizzell, nor does she address how such evidence would have affected the outcome of trial.

"A trial court has the inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it. [Citations.] This authority includes the power to supervise proceedings for the orderly conduct of the court's business and to guard against inept procedures and unnecessary indulgences that tend to delay the conduct of its proceedings." (*California Crane School*, *supra*, 226 Cal.App.4th at p. 22.)

The court's inherent authority includes "broad authority over the admission of evidence" (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1379) and "the power to expedite proceedings" (*California Crane School*, *supra*, 226 Cal.App.4th at p. 22) or restrict the length of witness testimony, where further testimony would not significantly aid the trier of fact (*id.* at pp. 20, 22). Nonetheless, a court's broad discretion to manage the litigation may not deprive a party of a fair trial by denying the party the right to be heard and "have his day in court." (*Id.* at pp. 22–23.)

Here, the trial court warned Yu several times during trial that she was testifying and "telling the witness what happened as fact" when she was examining witnesses. On the fifth day of testimony, the court told Yu that if the issue persisted, the court would either "cut[] off [her] ability to ask questions" or require her to write out her questions and give them to the judge to ask the witness. After Yu continued to ignore the court's warnings, the court ordered Yu to write out her final questions for El-Daoushy "so she can be thoughtful about it." In doing so, the court indicated that the 12 hours it had allotted to Yu for direct examination of her witnesses were nearly finished, but "despite many warnings from the court, [she had] repeatedly

22

asked questions about issues that [were] cumulative and only somewhat relevant to the case."

On this record, the trial court reasonably focused witness questioning to enable Yu to adduce admissible, relevant, and non-cumulative evidence within the estimated time of trial. This was within the court's broad authority to control and manage the proceedings efficiently. (*California Crane School, supra,* 226 Cal.App.4th at p. 22.) Yu has not shown that the court's actions unduly restricted her ability to present her case.

### E. *Yu's Remaining Contentions*

Finally, Yu contends the trial court committed reversible error by failing to poll the jury after the jury returned the special verdict, requiring the parties to exchange deposition designations for trial witnesses, and "fail[ing]" in the jury selection process. (Boldface omitted.) We address and reject each contention in turn.[5]

### 1. *Failure to Poll the Jury*

Yu argues that the special verdict is "incomplete." She contends that the jury "had questions and got confused" about the special verdict form and that due to this confusion, she asked the trial court to poll each juror to see if they agreed with the verdict but the court refused to do so.

---

[5] Yu appears to raise several other arguments that are mixed indiscriminately throughout her opening brief. We need not consider these arguments as they were not identified under a proper heading nor adequately developed by Yu. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 [" 'we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument' "].) Moreover, we decline to consider the new issues Yu raises in her reply brief. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

23

What Yu omits from her appellate briefing is that the jurors were confused about how to answer the poll, not the special verdict form, and this confusion prompted the jury foreperson to tell the court that "all answers were unanimous." The court then asked if "every juror agree[d]." After the jurors responded in the affirmative, the court asked if there was any juror who disagreed. The record shows that "no one disagreed." Although Yu told the court that she "would like to know in every detail" how each individual juror voted, the court said it was "not inclined to poll the jury further" because "all of the jurors have indicated that they voted as indicated."

"When a jury is composed of 12 persons, it is sufficient if any nine jurors arrive at each special verdict." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 255, italics omitted.) The jury's verdict is signed by the presiding juror and given to the clerk, who reads the verdict and asks the jury whether it is their verdict. (Code Civ. Proc., § 618.) "Either party may require the jury to be polled, which is done by the court or clerk, asking each juror if it is the juror's verdict." (*Keener*, at p. 256.)

Code of Civil Procedure section 618 provides in part, "If upon inquiry or polling, more than one-fourth of the jurors disagree [with the verdict], the jury must be sent out again, but if no disagreement is expressed, the verdict is complete and the jury discharged from the case." That statutory provision "effectively creates a 'rebuttable presumption: If a verdict *appears* complete, it *is* complete *unless* there is an affirmative showing [during polling] to the contrary.' " (*Keener v. Jeld-Wen, Inc.*, *supra*, 46 Cal.4th at p. 257.) Code of Civil Procedure "section 618 requires *affirmative* disagreement—an utterance, statement, or some similar active conduct—of 'more than one fourth' of the jurors in order to prevent a trial court from finding the verdict to be complete and from then discharging the jury." (*Id.* at p. 259.) "[A]

24

juror's mere *silence* at polling, brought about by the trial court's failure to poll the juror on one of multiple special verdict questions, does not constitute an expressed disagreement with the verdict under section 618." (*Ibid.*)

Here, the record shows that each juror was polled, albeit collectively, and none of them expressed disagreement with the verdict. Thus, we conclude that the verdict is complete under Code of Civil Procedure section 618. To the extent Yu is suggesting that the polling was deficient because the court did not poll each individual juror separately, she has not developed an argument that reversal is required on that basis despite all jurors expressing agreement with the verdict.

### 2. Deposition Designations

Yu argues that the trial court's requirement that the parties exchange deposition designations for trial witnesses wasted time and made the court "impatient and rush[] to end the trial." Yu provides no supporting authority or citations to the record other than to the court's orders requiring the exchange of deposition designations for witnesses who would not be appearing live at trial. (Boldface omitted.) Thus, the legal basis for this argument is unclear, and we decline to speculate. Moreover, Yu has not shown that the error, if any, affected the outcome of trial. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

### 3. Jury Selection Issues

Finally, in arguing that the trial court failed in the jury selection process, Yu notes that she was entitled to six peremptory challenges and that the court granted Kaiser's request for an in-person trial but conducted jury selection through "Zoom." Yu appears to be arguing that the court committed

25

reversible error by conducting jury selection over Zoom and by denying her the use of a peremptory challenge. We disagree on both counts.

For the first issue, Kaiser argues that the court's decision to conduct jury selection over Zoom was within the court's discretion "to control voir dire and to contain it within reasonable limits." (*People v. Banner* (1992) 3 Cal.App.4th 1315, 1324.) Yu provides no authority to the contrary, nor does she demonstrate that the alleged error resulted in prejudice to her. We therefore find no reversible error based on the court's decision to conduct jury selection over Zoom.

Turning to Yu's peremptory challenge argument, Yu presents no argument or citation to the record in her opening brief in support of this argument. She argues in her reply brief that the trial court denied her peremptory challenge to remove the jury foreperson, but the few record citations she provides do not support her factual assertions or indicate whether the court denied Yu the use of a peremptory challenge. Moreover, Yu confirms in her reply that there was "no court reporter to record the improper" jury selection, and that the court clerk "failed to record how each party exercised the peremptory challenge." Without an adequate record, we cannot determine whether the court improperly denied Yu the use of a peremptory challenge and whether the denial was prejudicial. For these reasons, we treat the point as forfeited. (See *Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784–785; *Barak v. Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660 ["[f]ailure to provide an adequate record on an issue requires that the issue be resolved against appellant"].)[6]

---

[6] During oral argument, Yu appeared to contend that the trial court committed cumulative error. We have rejected nearly all of Yu's claims of error. For her two remaining claims—that the trial court erroneously permitted an oral motion for directed verdict and that the jury instructions

## III.   DISPOSITION

The judgment in favor of defendants is affirmed.

 

 

_____
LANGHORNE WILSON, J.

WE CONCUR:

_____
BANKE, Acting P. J.

_____
SMILEY, J.

*Yu v. Kaiser Permanente / A169089*

---

were inaccurate—we have determined that any error was harmless. Assuming without deciding that these two claims of error are meritorious, the errors were not significant, even considered collectively.  Thus, Yu's claim of cumulative error fails.  (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1382.)